FRED C. POLK, et al. v CHATTANOOGA WAGON & BODY CO.

Eastern Section.    March 27, 1926.

No petition for Certiorari was filed.

1. **Trial. Plaintiff cannot recover on an instrument other than one set up in petition.**

In an action to recover on a contract where the complainant set up a written instrument and the defendant answered denying the instrument sued upon and alleging another instrument and the reply was a general denial, **held** that complainant could not recover on the contract set up in the answer of defendant, but must rely on the contract he pleaded for his recovery.

2. **Principal and agent. Principal is not bound by acts of agent beyond agent's authority.**

In an action to recover on a contract for lumber sold where the lumber was to be inspected and the buyer sent an inspector with a copy of the written contract to inspect the lumber for it, in accordance with the terms of the contract and the agent disregarded the contract and inspected the lumber in regard to another contract, **held** that the buyer was not estopped by the acts of the agent to deny that the lumber did not comply with the specifications in the contract.

Appeal from Chancery Court, Hamilton County; Hon. W. B. Garwin, Chancellor.

Affirmed.

Lusk & Thompson, and R. A. Cogswell, of Chattanooga, for appellant.

Sizer, Chambliss & Johnson, of Chattanooga, for appellee.

SNODGRASS, J.   The bill in this cause was filed to recover of the defendant $997.05 for lumber, which was alleged to have been sold, shipped and delivered to the defendant by the complainants under a written order filed as exhibit to the bill, which averred a solitary stipulation or verbal agreement with reference to inspection on complainants' yards by defendant's inspector.

There were two pleas filed as a part of the answer, one being non est factum, and the other under the uniform sales act, that the amount of the sale was over $500 and, being verbal, that the defendant did not accept any part of the lumber so contracted to be sold, nor actually

receive the same, or any part of it, nor give anything in earnest to bind the contract, or in part payment, and that no note or memorandum in writing of the said contract of sale was signed by the party to be charged, or his agent in that behalf. Wherefore it was claimed the contract was not enforceable under the act.

The answer then sets up a verbal contract under which it was alleged the carload of lumber was inspected by its inspector and shipped, but it claims that the lumber, according to the stipulation of the contract, was to be fit for its use. in manufacturing into wagons, etc., which complainant well knew; that the same was to be sound, square edged, with all sap, rots and other defects, except as allowed by National Hardwood Association grade, to be measured off and deducted; that while the carload was shipped and unloaded on its yards for examination, it was utterly unfit for its use, not inspected according to contract and written instructions to inspector, not meeting the grade, never accepted, and that complainants were notified it was held subject to their order; that defendant was not bound by the action of the inspector, because he exceeded his written authority, and that the lumber had not damaged since it was unloaded.

Issue was joined on the pleas set up in the answer and the case went to trial upon the whole record before the Chancellor, who filed a written opinion in the case, dismissed the bill at the cost of complainants and their sureties, reciting in the decree that the allegations of the bill are fully met and denied by the pleas and answer of the defendant, and not sustained by the proof.

From this decree the complainants prayed, obtained and perfected an appeal to this court, and their complaints are:

"1st. The court erred in dismissing complainants' bill."

"2nd. The court erred because it did not grant complainants a decree against defendant for the amount sued for, being purchase price for said lumber."

"3rd. The court erred in sustaining defendant's plea of non est factum and dismissing the bill on that ground."

"4th. The court erred in holding that the order for lumber was never accepted by the complainants and in dismissing bill on that ground."

"5th. The court erred in sustaining defendant's plea of the statute of frauds and dismissing bill on that ground."

"6th. The court erred in holding that complainants were not entitled to recover upon any express or implied verbal contract respecting said lumber and in dismissing bill on that ground."

"7th. The court erred in holding that the evidence of the complainant was immaterial and irrelevant with respect to the usages and customs of the lumber business making the inspection and

judgment of a regular inspector final and in excluding this testimony."

"8th. The court erred in holding that the lumber did not conform to the written order and in dismissing bill on that ground."

· "9th. The court erred in not holding that the defendant was bound and held liable by their inspector Stewart's inspection and acceptance of said lumber and in not granting a decree for full amount sued for.."

The Chancellor's finding, with which in every material aspect we agree, especially as to the plea of *non est factum*, settles adversely to complainants every issue raised by the assignments of error. This opinion, which we adopt, states more fully the questions at issue, and is as follows:

"This is a suit to recover the price, according to an alleged sale contract, of a carload of lumber. The bill alleges that on January 31, 1924, the defendant company gave complainants an order in writing signed by it for the lumber in question and that this order was accepted by the complainants, with the additional verbal agreement of the parties that the defendant would send its inspector to the lumber yard of complainants, where the lumber was stored, and would there inspect and accept the lumber for the account of the defendant. The bill further alleges that the defendant did send its inspector who inspected and accepted the lumber as it was loaded into the car by complainant, that the quantity of lumber so inspected and accepted was 19,941 feet, which at the contract price of $50 per M. amounted to $997.05, that the lumber was received by defendant at its yard and unloaded but that the defendant has failed and refused to pay therefor. Finally the bill alleges that the failure of the defendant to pay for the lumber was upon the pretext that the lumber did not conform to the specifications and that, at any rate, if any part of the same was not in accordance with the specifications, the defendant was bound to pay for it because of the action of the inspector in accepting it. It will thus be seen that the claim of complainant of the right to enforce the contract is based primarily upon the memorandum signed by the defendant and secondarily upon the allegation that the defendant in fact accepted the merchandise, this being admittedly a contract for the sale of personal property, of a value in excess of $500."

"The defendant, without objection, filed two pleas and an answer. One plea was a special plea of non est factum. The other plea was that of the statute of frauds embraced in subsection 1 of section 4 of the Uniform Sales Act. The answer admits that the lumber was inspected by its inspector but alleges that it was not in accordance with the terms of the contract, that its inspec-

tor had no authority to vary the terms of the contract that the lumber was not accepted but that promptly upon the arrival of the lumber at its yards the defendant rejected the same and refused to accept it.''

"1.   The plea of non est factum is sustained by the proof.   The testimony of J. H. McVeigh for the defendant is positive and uncontradicted that exhibits 'B' and 'C' to his deposition are correct copies of the order as it was signed by the defendant and delivered to complainants. This order, in addition to stating the price to be paid for the lumber and the several dimensions and quantities of the same to be delivered, specified the quality in the following terms, viz:

" 'This stock to be sound, square edged; all sap-rot and other defects, except as allowed by National Hardwood grades, to be measured off and deducted.'

"The order sued on and filed as Exhibit 'A' to the bill is the same as Exhibit 'B' to McVeigh's deposition, except the words 'other defects' are stricken out with two lead pencil lines drawn through them. That these words 'other defects' were material is apparent from the order itself and is shown in the proof. This being so, the presumption is that the alteration was wrongful, and before complainants could sue upon this order or offer it in evidence, it was necessary for them to overcome the said presumption by evidence showing innocence on their part. There is no such evidence. On the contrary, the proof warrants the conclusion that the alteration was made by Mr. Fred C. Polk, one of the complainants and made intentionally because he conceived that the order as signed and delivered to him by defendant was not in accord with a prior verbal understanding which he claims he had with the representative of defendant, and because the lumber he expected to deliver would not conform to the order as signed and submitted to him.''

"11.   Leaving out of view the effect of the alteration, no suit can be maintained upon this order, because it was never accepted but was rejected by the complainants.''

"To show that this is so, and also as bearing upon the alteration and complainants' reasons for it, I quote the following from Mr. Polk's deposition:

"Q.   53.   I show you Exhibit 'A' to this bill which you filed, and ask you to look at that.   A.   Yes, they sent that.''

"Q.   54. State whether or not you ever accepted that as originally sent?   A.   No, sir.''

"Q.   55. Why not?   A.   The conversation we had in our office about this lumber and the way he said he expected to take it, did not come up to this order, we did not sign this order and sent

it back, but he sent a man right out and took this lumber up on this contract, this contract has been in our office and in the court all the time, this has never been back to their office, their inspector never saw this one, he had the original order when he came out to take the lumber.''

''Q. 56. When he brought it out, did you see what he had from his company? A. No, he said he had it.''

''Q. 57. You did not see it? A. No.''

''Q. 58. State whether or not the order here marked Exhibit 'A' to the bill called 'Chattanooga Wagon Company, Order #75 January 31, 1924—state whether or not the wording 'This stock to be sound, common square edged. All sap-rot and defects, except as allowed by the National Hardwood Association to be measured off and deducted.' State whether or not that wording in this particular sheet of paper was in conformity with the oral order given by Mr. McVeigh some years ago? A. No, because he said he would give us a liberal inspection on that lumber.''

''He again testified as follows:

''Q. 64. State whether or not you refused to sign this order with the words 'other defects' in it? A. Yes, we did.''

''And on cross-examination he testified as follows:

''Q. 1. You say you never did accept the written order filed as Exhibit 'A' to the original bill? We never did send it back.'

''Q. 2. You said it wasn't in conformity with the verbal understanding? A Yes.''

''Q. 3. That is the reason you did not accept it? A. Yes.''

''Q. 4. But as a matter of fact, you say the lumber that you shipped to the Chattanooga Wagon & Body Co. did have defects in it which would not have been admitted under this written order, that is true? A. Yes, but they was measured off.''

''111. For the reasons stated under 1 and 11 above, complainants manifestly are not entitled to recover upon the written order signed by defendant. In the face of the plea of the statute of frauds, they are equally not entitled to recover upon any express or implied verbal contract. No part of the lumber was ever accepted. The action of the defendant's inspector in inspecting and passing the lumber did not constitute acceptance and this was so understood by the complainants. Thus, Mr. Polk on direct examination testified as follows:

''Q. 78. Do you know that this lumber got to the defendant's plant? A. We have every right to think so because they refused to accept it.''

''And their Bookkeeper, W. H. Sneed, testified as follows:

"Q. 20. What did they tell you why they would not pay for it? A. Said it wasn't up to grade, refused to accept the lumber. It was unloaded."

"IV. The lumber did not in fact conform to the written order. This is practically admitted by Mr. Polk in his deposition, particularly in his answer to the 4th cross question above quoted; and if this was not so, there would have been no motive for him to strike the words 'other defects' out of the order. It is shown by the testimony of the witnesses for the defendant —and I think it is quite apparent from the testimony of the inspector Stewart himself. Mr. Polk objected to the words 'other defects' because, he says, that under the verbal understanding with Mr. McVeigh he was to have a 'liberal inspection.' There was no provision for a liberal inspection in the order signed by defendant, but there is no doubt from the evidence that Stewart gave them much more than a liberal inspection, and rejecting only about 200 feet, passed the whole of a lot of lumber which he had previously pronounced unfit for defendant's use."

"Notwithstanding the fact that the lumber did not conform to the order, yet complainants insist that the defendant must take it and pay for it because its inspector inspected it and passed it. They have introduced witnesses as to a custom in the trade that an inspection is final. In my opinion this evidence is immaterial and irrelevant. Stewart had no authority except to inspect this lumber according to the terms of the written order, a copy of which was placed in his hands for that purpose. This he did not do, but through misconception or otherwise made an inspection upon a basis different from the order. The defendant is not bound by such an inspection."

"It results that the bill must be dismissed with costs."

As will be observed, the complainants predicated their right of recovery solely upon the written contract and single verbal addition thereto as to inspection. Their only right to a judgment, therefore, depended upon their establishing the written contract as alleged. They could not have predicated any recovery upon any case made in the answer, because they did not amend their bill so as to avoid the matter of discharge which the answer set up as to any other contract verbal or otherwise.

"Where the answer denies the precise case alleged in the bill and sets up a different case, if the complainant failed to prove the case he alleges, and he be entitled to any relief on the case set up in the answer, the court will grant him such relief. It would be more regular in such cases, however, for the complainant to amend his bill and charge the case made in the answer; but, as courts of chancery disregard form, a decree will be ren-

dered as though such an amendment had been made. But when relief is based upon an answer, the whole answer must be taken together, the matters of discharge as well as the matters of charge; and when so considered must show that the complaint is entitled to relief, or none will be granted on the answer alone. In case the answer sets up a discharge, also, if the complainant wishes to avail himself of the matters of charge and disprove the matters of discharge, he must amend his bill, and allege the former and deny the latter.'' Gibson's Suits in Chancery, sec. 558, and authorities there cited.

The Chancellor having, as we think, properly found in favor of the plea of non est factum, that ended the case so far as the complainants are concerned, no matter what may have been the weight or effect of the proof as to issues made only by the proof. Proof without issues is as much unavailable to support a decree as are issues without proof.

The other questions determined by the Chancellor, though correctly determined, we think were not material after having determined the issue of non est factum as he did, and the case did not reach any question of estoppel so far as issues were concerned. But if it had, upon any question which might simply have involved the inspector's honest judgment as to whether or not any particular board was acceptable under the rules, his principal would have been bound by its exercise. But it is fundamental, we think, that he had no right to set aside his written instructions and accept any character of lumber not covered by them, nor could he make any departure therefrom clearly not involving an honest exercise of judgment. He was sent there to inspect and accept all lumber that would reasonably go under the contract already made, and not to make any new contract, under which lumber ineligible under the old contract might pass under any latitude allowed by the new. To make a new contract, therefore, was not within the apparent scope of his authority.

In this case the complainants, in contradiction to their bill, try to bring forward an alleged contract not mentioned in the bill, which it was claimed existed previously to take that particular mass of lumber on consideration of the complainants accepting twenty-five per cent of an account existing against a failing corporation, which the present one succeeded. If any such contract had been made, which the proof did not establish, it was not the one sued on in the bill. The alleged new contract, which the bill adopts as the grounds of liability, does not admit of any latitude of construction involving its consideration, but throws light upon the question of the estoppel claimed. According to the proof whatever the defendant may have known as to the quality of lumber unsuitable for his purposes which may have obtained in the mass, he sent the complainants a written

contract, containing an express description or limitation of the kind he was willing to accept. This written statement the complainants received, and retained, though they assume, without the knowledge of the defendant, to strike out of it the important and material words that would have rendered the most, if not all of their lumber ineligible. The defendant sent its inspector there to receive such part of it as would pass muster under the written rules of inspection of the National Hardwood association, which it seems the inspector departed from without the knowledge or consent of the defendant. He thus exceeded his authority, which, from having changed the contract sent them, the complainants evidently knew, or had reason to think he was doing. The first intimation the defendant had that the inspector had done so was after the car had arrived within its yards, when, upon discovery it declined to receive the lumber and notified the complainants. The complainants therefore were not influenced to any action in the shipment of the lumber by any act knowingly committed by the defendant, nor by any authorized act of the agent, which would have imputed such knowledge, and the defendant is therefore, we think, not precluded from a defense invoked upon its discovery.

Complainants certainly had no reason to think that the defendant had acquiesced in the striking out by them of a material portion of the written order, not having been apprised of it, and Polk, being an experienced lumberman himself, must have known that the agent, so far as the original written order was concerned, was exceeding his authority, and we think bound to know at his peril what the extent of the agent's authority to do so was. They cannot be allowed to claim an acquiescence by the agent in the change they themselves made in the original contract so as to bind the principal, without admitting that the agent must have had authority to make the change, which authority cannot be established merely by the agent's acquiescence, or by his assumption to change the contract simply by such acquiescence. Earnsworth v. Sharp, 4 Sneed, 54; Rankin v. Eakin, 3 Head., 229; See also 21 R. C. L., sec. 80; p. 908.

These considerations, we think, show that no estoppel was created under the circumstances, had it been necessary to consider such a question.

Upon the whole we are satisfied there is no merit in any of the assignments. They are all overruled and the judgment of the lower court affirmed, with costs against appellants and their security.

Portrum and Thompson, JJ., concur.